## HANNAH HARDING *vs.* JOB RANDALL.

When one party makes a misrepresentation of fact, upon the faith of which the other acts, it is immaterial, in a court of equity, whether he knew of its falsehood, or made the assertion without knowing whether it were true or false; and a conveyance of land obtained by such false representation is void.

Where a recorded deed of land has been obtained through fraud, the grantee will not be permitted in a court of equity to say, that the grantor was so disseized thereby, that no title to the same could pass from him to a third person, by deed or by devise.

THIS was a bill in equity, and was heard on bill, answer, and proof. The case, and the points made in defence, appear in the opinion of the Court.

*S. Fessenden* and *S. Longfellow, Jr.* argued for the plaintiff, and cited 1 *Story on Eq.* § 188, 190, 193, 140, 161; 2 *Kent's Com. c.* 39; *Smithwick* v. *Jordan,* 15 *Mass. R.* 113.

*Mellen* argued for the defendant, and cited *Low* v. *Treadwell,* 3 *Fairf.* 441; *Elder* v. *Elder,* 1 *Fairf.* 80; 1 *Mad. Ch.* 76; *Jeremy's Eq.* 366; 2 *Atk.* 592; 3 *Swanst.* 463; 1 *Story's Eq.* 146, 147; 2 *Johns. Ch. R.* 557; *ib.* 632.

The case was continued for advisement, and the opinion of the Court subsequently drawn up by

SHEPLEY J. — The bill in substance alleges, that the respondent either by fraud or by mistake, obtained a deed of a lot of land from the plaintiff's late husband, so describing the lot as to include the easterly end of a dwellinghouse standing upon an adjoining lot, and a well near to it; when it was the intention and belief of the grantor, that the boundary line should pass two feet easterly of the

eastern end of the house, and should exclude the well. The deed bears date the sixth day of *March*, 1833. The plaintiff claims title by devise from her late husband, and by purchase from his heirs at law.

The answer denies the false representation and fraud charged in the bill ; alleges that he was urged to purchase ; had been a very long time in treaty for it ; that one object was to straighten the line of a former purchase ; that the bounds were stated in the deed, as they were designed to be ; and that there was no mistake unless it was a mutual one arising from their inattention or ignorance, where the line of the lot conveyed would intersect the main street.

The general replication has been filed, and the proof has been taken, which must be examined, to ascertain how far the allegations of the bill are supported. It is in proof that the grantor was un-well and paid little attention to his business, most of which was transacted through the agency of the plaintiff.

It further appears, that there was a building standing upon the lot, in such a manner as to prevent one from ascertaining by the eye, where the westerly line of the lot would intersect the street. Three witnesses, *Joshua Harding*, *Eliza Brintnell*, and *William H. Plummer*, agree in substance, making allowance for the differ-ence of language, in testifying, that the day before, or on the day of the execution of the deed, and immediately before it was executed, a conversation was had between the plaintiff and defendant, in which the plaintiff stated, that it was her intention to leave room for the blinds on the house to swing, and not to include the well, and that in answer to her inquiries, the defendant stated, that the line would leave sufficient room for the blinds to swing, that it would not come within two feet of the end of the house, that it came hard on the well, but did not include it. That the plaintiff stated to the defendant, that the land had not been measured, and that she trusted altogether to his word, or his honor, and that he repeated the assurances which he had before given ; that she said she preferred having it measured, and that he urged the immediate execution of the deed, stating, that he wished to put a frame upon the lot. *J. S. Libbey* testifies to the same in substance except, that he says nothing of the well. *Joshua Harding* also says, that in the same conversation " *Mr. Randall* said he had measured the

ground before getting the deed made, and knew all about the lines." *William Smith* testifies, that the defendant stated to the grantor about the time they were making the bargain, that the line would not touch the house by about four feet, or some feet; and that a week or two after he saw the defendant and his brother measuring the line upon the street, and the brother shew him where the bound would be, and that it extended so far as to include one of the front windows of the house. *Clement Randall,* the brother, testifies, that he did assist in measuring the line in *March,* 1833, that it was after the deed was executed, that he did not see *Smith* there, and did not shew him the line. *Thomas McKenney* testifies, that in the spring or summer after the deed, the defendant said, he expected the line would go into the house, but not so far; that he expressed his surprize to find, that the line extended on to the house so far; and said *Harding* was surprized at it.

*Charles Milliken* testifies, that in the year 1826, he and the defendant measured on the lot for the purpose of building cellar walls for *Harding,* and placed the wall about eighteen inches from the house where it remained in good condition about five years ago. *Benjamin Larrabee* testifies, that he surveyed the lot in the presence of the plaintiff and the defendant, and ascertained, that the line included about five feet of the dwellinghouse; that the plaintiff was much surprized, and stated to the defendant, that he told her, that the bounds would not encroach upon the house; and that she had been deceived in the deed. The witness, does not state, that he denied the truth of her statements. From this evidence taken in connexion with the nature of the transaction, there can be no doubt, that the grantor did not intend to convey a small part of the dwellinghouse and lot, and that every precaution was taken to avoid it, which could be expected, if assurances of the grantee were to be at all relied upon. It is equally clear, that the defendant could not honestly have expected or designed to include any part of the house, or the well, in his purchase. Allowing to the answer all its legal weight, there can be as little doubt, that the grantor was induced to execute the deed, with such a description contained in it, by the false representation of the defendant. Whether the defendant at the time, knew such representations to be false may admit of more doubt. Yet the facts, that he had procured the deed

to be written, was in haste to have it executed, avoided having the lot measured, with the other testimony, though in some degree contradicted by *Clement Randall* and by the answer, lead one strongly toward such a conclusion.

It remains to apply the law to such a state of facts. For the defendant it is insisted, that equity will act upon the rule at law, and will not interfere, if the representations were in fact untrue, unless the defendant at the time knew them to be untrue. But this case is distinguished from that class of cases by there being a trust and confidence reposed in the party making the representations, and by him accepted with professions of a knowledge of the subject.

*Story*, speaking of actual frauds, says, " whether a party, thus misrepresenting a fact, knew it to be false, or made the assertion without knowing whether it were true or false, is wholly immaterial ; for the affirmation of what one does not know, or believe to be true, is equally in morals and law as unjustifiable, as the affirmation of what is known to be positively false. And even if the party innocently misrepresents a fact by mistake, it is equally conclusive ; for it operates as a surprize and imposition on the other party." 1 *Story's Eq.* 202.

It is said in *Ainslie* v. *Medlycott*, 9 *Ves.* 13, " if knowingly he represents what is not true no doubt he is bound. If without knowing that it is not true, he takes upon himself to make a representation to another, upon the faith of which that other acts, no doubt he is bound, though his mistake was perfectly innocent."

According to these principles this is a clear case for a court of equity to give relief. But it is said that the plaintiff has no title, and has therefore suffered no injury, and is entitled to no relief. The objection to the title is, that the testator did not die seized of the portion in controversy, and it did not pass by the will. Nor could the heirs at law convey it by their deeds, because they were disseized by the defendant.

The effect of this argument is, to allow the defendant to set up the very deed obtained by his own fraudulent acts as creating a disseizin, while it must be held inoperative as a conveyance ; thus making it operative to destroy the title of the grantor, and inoperative on account of the fraud to pass the title to the grantee. If for

the argument it be admitted, that the defendant did acquire a seizin by the deed, and disseized the grantor, will a court of equity allow him to take advantage of it? In the case of *Huguenin* v. *Basely,* 14 *Ves.* 289, the Chancellor says, "I should regret that any doubt could be entertained, whether it is not competent to a court of equity to take away from third persons the benefits, which they have derived from the fraud, imposition, or undue influence of others." If it may be taken from third persons, surely the party himself cannot be allowed to enjoy a benefit thus derived; and he cannot be allowed to set up a disability in others or a benefit to himself from such an act.

If the matter in which the instrument is not correct demonstrates fraud, the Court will generally set it aside. *Watt* v. *Grove,* 2 *Sch. & Lef.* 502. The Court will grant relief to the extent of the injury suffered. *Dunlap* v. *Stetson,* 4 *Mass. R.* 349. The defendant must be bound by his own representations, and can hold no more than he assented that the deed would convey.

The westerly line of the lot must be so varied as to run from the northerly corner, in a direction to exclude the well and to intersect the main street, two feet easterly of the dwellinghouse; and the defendant is to be perpetually enjoined against claiming any title westerly of that line; and a decree is to be entered accordingly, with costs for the plaintiff.